**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT NASHVILLE**

_____

|   |   |   |
|---|---|---|
| **RICHARD EVERETT COLLINS**, | ) | Coffee County Chancery Court |
|  | ) | No. 97-258 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9808-CH-00433 |
|  | ) |  |
| **RACHEL E. WILLIS**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

FILED

**May 13, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Coffee County at Manchester
**Honorable Jeffrey Stewart, Judge**

**A. Thomas Monceret**, MONCERET & JOHNSON, Knoxville, Tennessee
Attorney for Plaintiff/Appellant.


**H. Thomas Parsons**, PARSONS & NICHOLS, Manchester, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Richard Everett Collins appeals an order of the divorce court valuing and distributing the parties' marital property. Additionally, Rachel E. Willis argues that Mr. Collins' appeal is frivolous, thus entitling her to recover an award for attorney fees incurred in defending the appeal. For the reasons set forth below, we affirm the ruling of the trial court and deny Ms. Willis' request for attorney fees.

*Procedural History*

Mr. Collins and Ms. Willis were married in November of 1993 and resided together until their separation in June of 1997. In June of 1998, the trial court granted a divorce to the parties on the stipulated grounds of irreconcilable differences, valued the parties' marital property, distributed the parties' marital property, and allocated the parties' marital debt. A final decree of divorce, which incorporated the court's ruling, was entered in July of 1998. The court's valuation and distribution of the parties' marital property is summarized as follows:

| Marital Property | Value | Party to Whom Property is Awarded |
| --- | --- | --- |
| Ford Trucks (2) | $20,800.00 | Mr. Collins |
| Ford Car | $10,000.00 | Ms. Willis |
| Home, 7 Acres | $100,000.00 | Ms. Willis |
| Trailer and Tools | $3,000.00 | Mr. Collins |
| Bedroom Suite | $2,500.00 | Mr. Collins |
| Cracker Barrel Stock | $150.00 | Mr. Collins |
| Household Items | $750.00 | Mr. Collins |
| Household Items | $1,500.00 | Ms. Willis |
| Ms. Willis' 401(k) | $10,500.00 | Ms. Willis |
| Boat and Computer | $8,000.00 | Mr. Collins |
| Total | $157,200.00 | |

**Value of Marital Property Awarded to Mr. Collins:    $35,200.00**
**Value of Marital Property Awarded to Ms. Willis:    $122,000.00**

Additionally, the court's ruling with respect to the allocation of the parties' marital debt is summarized as follows:

| Encumbered Marital Property | Amount of Debt | Party by Whom Debt is Assumed |
|---|---|---|
| Ford Trucks (2) | $18,900.00 | Mr. Collins |
| Ford Car | $14,000.00 | Ms. Willis |
| Home, 7 Acres | $89,000.00 | Ms. Willis |
| Boat and Computer | $5,500.00 | Mr. Collins |
| MBNA | $6,000.00 | Ms. Willis |
| MasterCard | $3,000.00 | Ms. Willis |
| Amoco | $400.00 | Ms. Willis |
| Total | $136,800.00 | |

**Total Marital Debt Assumed by Mr. Collins:**     **$24,400.00**
**Total Marital Debt Assumed by Ms. Willis:**     **$112,400.00**

Thus, pursuant to the trial court's ruling, Mr. Collins received marital property valued at $35,200.00 and assumed $24,400.00 of the marital debt. It follows, then, that the net value of the marital property distributed to Mr. Collins is $10,800.00. Ms. Willis received marital property valued at $122,000.00 and assumed $112,400.00 of the marital debt. Accordingly, the net value of the marital property distributed to Ms. Willis is $9,600.00.

*Valuation of Marital Property*

Prior to the parties' marriage, Ms. Willis purchased a new home for $94,000.00. Shortly thereafter, she discovered that the house was structurally defective and in need of extensive repair. Consequently, Ms. Willis filed an action against the builder seeking $27,500.00 in damages. The lawsuit was settled for $20,000.00 and, after costs and attorney fees were paid, Ms. Willis ultimately received $13,000.00. She then placed approximately one-half of the settlement proceeds ($6,500.00) into a separate bank account with the intention that the deposited funds would later be applied toward the expenses of repairing the house. Mr. Collins is a self-employed general contractor. During the marriage, Mr. Collins made substantial improvements to the parties' home, contributing his own labor as well as materials that otherwise would have been used in the course of his contracting business.

At trial, the parties disagreed regarding the fair market value of their home. According to Ms. Willis, she received a 1997 tax assessment notice indicating that the value of the house was "just under $100,000.00." Approximately eight months prior to trial, the house was appraised.[1] Based in part on this appraisal, Ms. Willis estimated that, on the date that the parties separated, the value of the house was approximately $100,000.00. She further testified, however, that its value on the date of trial was approximately $105,000.00 to $110,000.00. Ms. Willis then indicated that, if she decided to place the house on the market, she would list the property at $105,000.00 but would hope to sell it for $100,000.00. Mr. Collins denied that the fair market value of the parties' home was $100,000.00. Contrary to Ms. Willis' estimate, Mr. Collins testified that, at the time of trial, the home was worth approximately $144,500.00.

In its ruling, the trial court commented that "the testimony given by Ms. Willis is more credible in light of all the circumstances as to the valuation of the property." The court then adopted Ms. Willis' estimate regarding the fair market value of the parties' home. On appeal, Mr. Collins argues that the trial court's valuation of this property was in error. We disagree. The trial court was called upon to make a factual determination that necessarily required the court to evaluate the credibility of witnesses. The court had an opportunity to observe the manner and demeanor of the witnesses as they testified and thus was in the best position to judge their credibility. Under the Tennessee Rules of Appellate procedure, findings of fact made by a trial court are entitled to a presumption of correctness and must be upheld unless they are contrary to the preponderance of the evidence. *See* T.R.A.P. 13(d). When an issue hinges on witness credibility, however, we may not reverse a trial court's factual findings unless, other than the witnesses' own testimony, there is clear and convincing evidence in the record to the contrary. *See Thompson v. Creswell Indus. Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. App. 1996)(quoting *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. App. 1974)). In the instant case, Mr. Collins failed to produce an appraisal or any other evidence establishing that the fair market value of the parties' home was $144,500.00. Thus, we find no error with respect to the trial court's valuation of this piece of property.

*Distribution of Marital Property*

---

[1]Although the appraiser's report was not admitted into evidence, it was marked as an exhibit to Ms. Willis' testimony for identification purposes only.

The trial court is authorized to make an equitable distribution of the parties' marital property. *See* Tenn. Code Ann. § 36-4-121(a)(1) (1996). Although the distribution must be equitable, the court is not required to divide the parties' marital property equally. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. App. 1997); *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. App. 1997). Additionally, we note that trial courts are afforded a great deal of discretion when dividing property upon divorce. *See Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Bookout*, 954 S.W.2d at 732; *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. App. 1994); *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. App. 1993); *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. App. 1993). Consistent with this general rule, the distribution of marital property made by the trial court in the instant case is entitled to a presumption of correctness and may not be reversed unless it is contrary to the preponderance of the evidence. *See Wade*, 897 S.W.2d at 715; *Loyd*, 860 S.W.2d at 411; *Barnhill v. Barnhill*, 826 S.W.2d 443, 450 (Tenn. App. 1991); T.R.A.P. 13(d).

On appeal, Mr. Collins contends that the trial court failed to equitably divide the parties' marital property. Specifically, Mr. Collins argues that, to the extent that these assets increased in value during the marriage, he is entitled to a share of the parties' home and Ms. Willis' 401(k) retirement account. In determining whether the trial court equitably divided the parties' marital property, we must first consider whether the increased value of the home and the 401(k) account qualify as marital property. The term "marital property" is defined by section 36-4-121 as follows:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121 (b)(1)(A), (B) (1996). It is undisputed that, during the marriage, Mr. Collins used his skills as a general contractor to make major repairs to the parties' home that significantly increased its value. It is clear, then, that Mr. Collins substantially contributed to the preservation and appreciation of the parties' home. Consequently, any increase in the value of the home that occurred during the marriage must be classified as marital property. Additionally, it is undisputed that the value of Ms. Willis' 401(k) retirement account increased by approximately $10,500.00 during the parties' marriage. Pension benefits accrued during marriage qualify as marital property, regardless of whether the non-employee spouse directly contributed to the increase in value of the employee spouse's pension. *See Kendrick v. Kendrick*, 902 S.W.2d 918, 926 (Tenn. App. 1994). *See also Cohen*, 937 S.W.2d at 830; *Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. App. 1996); *Batson v. Batson*, 769 S.W.2d 849, 856-57 (Tenn. App. 1988). Thus, the trial court properly classified the increased value of the house and the 401(k) account as marital property subject to distribution.

We next consider whether the trial court's distribution of marital property was equitable under the circumstances of the case at bar. Mr. Collins' argument assumes that he is entitled to an equitable share of each individual piece of marital property. However, we have previously held that a court's distribution of property upon divorce is not rendered inequitable simply because both parties did not receive a share of each piece of marital property. *See Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. App. 1994); *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990). Rather, the equity or inequity of the distribution is determined by examining the final results of the court's ruling. *See Watters*, 959 S.W.2d at 591; *Bookout*, 954 S.W.2d at 732; *Wade*, 897 S.W.2d at 717; *Thompson*, 797 S.W.2d at 604. In this case, the net value of the marital property received by Mr. Collins is $10,800.00. The net value of the marital property received by Ms. Willis, however, is only $9,600.00. Therefore, we reject Mr. Collins' contention that the court's distribution of marital property was inequitable.

### Frivolous Appeal

Finally, Ms. Willis contends that Mr. Collins' appeal is frivolous and that, consequently, Mr. Collins should be required to pay the attorney fees that she has incurred in

defending the appeal. Appellate courts are authorized by section 27-1-122 of the Tennessee Code Annotated to award damages against an appellant whose appeal is frivolous or taken solely for delay. *See* Tenn. Code Ann. § 27-1-122 (1980). The underlying purpose of this statute is to discourage groundless appeals and to redress the harm imposed upon harassed appellees. ***See Davis v. Gulf Ins. Group***, 546 S.W.2d 583, 586 (Tenn. 1977). The statute must not be interpreted, however, in such a way that it discourages legitimate appeals. ***See id.*** This Court has previously stated that a frivolous appeal is one that is devoid of merit and has little prospect of success. ***See Industrial Dev. Bd. v. Hancock***, 901 S.W.2d 382, 385 (Tenn. App. 1995). Although Mr. Collins' appeal was ultimately unsuccessful, we cannot say that it was groundless or devoid of merit. Additionally, there is no indication that Mr. Collins appealed the ruling of the trial court in order to harass Ms. Willis or to cause undue delay. We thus conclude that Mr. Collins' appeal is not frivolous within the meaning of section 27-1-122. Accordingly, we deny Ms. Willis' request for attorney fees.

### *Conclusion*

Based on the foregoing, the ruling of the trial court is in all respects affirmed. Additionally, we find that Ms. Willis is not entitled to recover attorney fees incurred in defending Mr. Collins' appeal. Costs on appeal are taxed to Mr. Collins, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)